2024 IL App (1st) 230360-U
No. 1-23-0360
Order filed June 28, 2024

Sixth Division

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | |
|---|---|
| JOHN THULIS and JAMES WEBB, | Appeal from the Circuit Court of Cook County. |
| Plaintiffs-Appellants, | |
| v. | No. 19 CH 9581 |
| CITY OF CHICAGO, | The Honorable |
| Defendant-Appellee. | Thaddeus L. Wilson, Judge, presiding. |

JUSTICE HYMAN delivered the judgment of the court.
Justices C.A. Walker and Tailor concurred in the judgment.

**ORDER**

¶ 1     *Held*:  Order dismissing complaint is reversed where City failed to establish that class action complaint to recover uncashed checks was barred under *res judicata* by dismissal of prior *qui tam* complaint; case remanded to address City's other arguments.

¶ 2     In *State ex rel. Thulis v. City of Chicago*, 2021 IL App (1st) 191675-U, we affirmed the

dismissal of a *qui tam* case on behalf of the State of Illinois against the City of Chicago. The

lawsuit alleged the City failed to turn over to the State more than 22,000 uncashed checks exceeding $11 million, as required by the Revised Uniform Unclaimed Property Act. (RUUPA). The same individuals then filed a complaint against the City on behalf of themselves and a purported class of payees of uncashed checks, alleging violations of RUUPA, the Interest Act, and the Consumer Fraud Act, as well as common law claims.

¶ 3    The City moved to dismiss, arguing the action was precluded under the principles of collateral estoppel and *res judicata*. The trial court dismissed, finding the case barred by collateral estoppel. Thulis and Webb appealed, arguing that neither collateral estoppel nor *res judicata* applied. The City argues only *res judicata*, waiving collateral estoppel.

¶ 4    We reverse. *Res judicata* does not pertain to this case. We find that the dismissal of the *qui tam* case was voluntary and not a final judgment on the merits and that the real party in interest in the *qui tam* case was the State. Thus, the dismissal did not bar the relators from bringing a class action complaint against the City. We remand for the trial court to rule on issues left unaddressed in the City's motion to dismiss.

¶ 5                                    Background

¶ 6    Between 1988 and 2018, the City of Chicago issued more than 22,000 checks, totaling more than $11 million to payees who did not cash them. Plaintiffs John Thulis and James Webb were two of those payees. Believing the City had violated the Revised Uniform Unclaimed Property Act (765 ILCS 1026/15-101 *et seq.* (West 2022) (RUUPA)) by failing to turn the uncashed checks over to the State, Thulis and Webb, as relators, filed a *qui tam* complaint on the State's behalf under the False Claims Act (740 ILCS 175/4. (West 2022)). The complaint alleged the City was liable for damages and civil penalties "for knowingly concealing, or

knowingly and improperly avoiding an obligation to report and transmit money or property to the State under [RUUPA]."

¶ 7 Exercising its prosecutorial discretion under the False Claims Act, the State moved to dismiss the *qui tam* case with prejudice. The relators opposed the State's motion arguing, in part, that the Attorney General was "indulg[ing] the City's intentional violation of the law," which harmed the State by "conscripting the float for the City" and "unconsciously" harmed the payees, who should have been notified of the uncashed checks. The trial court entered a "final order" dismissing the action and denying the relators leave to amend.

¶ 8 The relators appealed, and we affirmed in *State ex rel. Thulis v. City of Chicago*, 2021 IL App (1st) 191675-U. Relying on *State ex rel. Beeler, Schad and Diamond, P.C. v. Burlington Coat Factory Warehouse Corporation*, 369 Ill. App. 3d 507, 517 (2006), we stated that barring glaring evidence of fraud or bad faith, the State is presumed to act in good faith and decides which cases to pursue, not the courts. *Id.* ¶ 20. We found no "glaring evidence of fraud or bad faith by the State in dismissing the *qui tam* action *** that would warrant a deprivation of its prosecutorial discretion as the chief legal officer of our state." *Id.* ¶ 23.

¶ 9 We questioned the rationality of a *qui tam* action, noting that "our supreme court has consistently recognized that in a *qui tam* action under the False Claims Act, there is 'no cognizable injury in fact suffered by the relator.' " *State ex rel. Leibowitz v. Family Vision Care, LLC*, 2020 IL 124754, ¶ 63 (citing *Scachitti v. UBS Financial Services*, 215 Ill. 2d 484, 508 (2005). See also *Burlington Coat Factory*, 369 Ill. App. 3d at 513 ("a relator has suffered no direct injury as a result of false claims under the Act" and "[o]nly the State has been injured by the false claims and is the real party in interest"). We indicated that the relators and the thousands of other payees may have property interests. *Id.* at 24.

¶ 10                                    Class Action Complaint

¶ 11         During the appeal of the *qui tam* dismissal order, Thulis and Webb filed a class action

against the City, alleging violations of RUUPA, the Interest Act, and the Consumer Fraud Act

on behalf of all "payees of uncashed City of Chicago checks."

¶ 12         The City brought a combined motion to dismiss under section 2-619.1 of the Code of Civil

Procedure (735 ILCS 5/2-619.1 (West 2022)) (Code) for lack of standing and failing to state a

claim. The City also sought a stay while the appellate court considered the *qui tam* case, which

the trial court granted.

¶ 13         After the stay was lifted, Thulis and Webb filed a first amended complaint, alleging the

City (i) violated the RUUPA (765 ILCS 12026/15 (West 2022)) by failing to report or turn

over to the State uncashed checks it held (count I); (ii) violated the Interest Act (815 ILCS

205/2 (West 2022)) by unreasonably and vexatiously delaying paying the uncashed checks

(count II); and (iii) (iii) violated the Consumer Fraud Act (815 ILCS 510/1, *et seq.* (West 2022))

by concealing and failing to turn over the uncashed checks to the State. The complaint also

alleged common law claims of unjust enrichment (count IV), conversion (count V), and sought

mandamus relief, requiring the City to comply with RUUPA (count VI).

¶ 14         The City sought dismissal under section 2-619.1 of the Code (735 ILCS 5/2-619.1 (West

2022)). The City contended that the dismissal of the *qui tam* case triggered the doctrines of

collateral estoppel and *res judicata*. Alternatively, the City argued that (i) RUUPA does not

provide for a private or implied cause of action, (ii) the Interest Act is not enforceable against

the City and is not a standalone cause of action, (iii) the Consumer Fraud Act cannot be

enforced against the City, (iv) the complaint failed to state a Consumer Fraud Act claim, and

(v) the complaint failed to state claims for unjust enrichment, conversion, or mandamus.

¶ 15    The trial court relied solely on the doctrine of collateral estoppel to dismiss with prejudice:

"Plaintiffs attempt to dress the current action up with different labels stitched onto their clothes but it is still essentially the same outfit they wore to the last dance. All six counts of Plaintiffs' Complaint rest upon the notion that the Uniform Disposition of Unclaimed Property Act is binding on the City. If allowed to proceed, the same issue raised in the *qui tam* action would be raised and litigated again."

¶ 16                                    Analysis

¶ 17    As noted, the trial court dismissed the complaint on collateral estoppel grounds only, without addressing *res judicata* or the City's other arguments. Nonetheless, we may affirm on any basis supported by the record regardless of whether the trial court relied on it, even in cases involving motions to dismiss. See, *e.g., Beacham v. Walker*, 231 Ill. 2d 51, 61 (2008) (noting, "this court may affirm the circuit court's judgment on any basis contained in the record" and finding grounds for affirming the decision of the circuit court dismissing a *habeas corpus* complaint). The City did not address collateral estoppel in its brief and acknowledged at oral argument it was waiving the issue. Thus, the issue for us to decide is whether the doctrine of *res judicata* bars the class action claims.

¶ 18                                 *Res Judicata*

¶ 19    "*Res judicata* prevents a multiplicity of lawsuits between the same parties where the facts and issues are the same. *Quintas v. Asset Management Group, Inc.*, 395 Ill. App. 3d 324, 328 (2009). Under the doctrine, a final judgment on the merits rendered by a "court of competent jurisdiction" bars a later suit between the same parties involving the same cause of action. *River Park, Inc. v. City of Highland Park*, 184 Ill. 2d 290, 302 (1998). The doctrine has three requirements: (i) a final judgment on the merits made by a court of competent jurisdiction, (ii)

the identity of parties or their privies in the lawsuits, and (iii) the identity of causes of action. *Hudson v. City of Chicago*, 228 Ill. 2d 462, 467 (2008). All three requirements must be met. See *Goodman v. Hanson*, 408 Ill. App. 3d 285, 300 (2011) (finding that although second and third requirements of *res judicata* were satisfied, "we cannot find that the first requirement is satisfied and thus the claim would not be barred by *res judicata*"). The party invoking the doctrine must show *res judicata*'s appropriateness. *Hernandez v. Pritikin*, 2012 IL 113054, ¶ 41. The defense of *res judicata* presents a question of law subject to *de novo* review. *Lelis v. Board of Trustees of Cicero Police Pension Fund*, 2013 IL App (1st) 121985, ¶ 13.

¶ 20                                    Final Judgment on the Merits

¶ 21        The City argues that under Illinois Supreme Court Rule 273, the trial court order dismissing the *qui tam* complaint and denying the relators' request to amend amounted to a final order terminating the case.

¶ 22        Rule 273 provides that "[u]nless the order of dismissal or a statute of this State otherwise specifies, an involuntary dismissal of an action, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join an indispensable party, operates as an adjudication upon the merits." A dismissal order will be deemed "on the merits" under Rule 273 "[i]f a circuit court involuntarily dismisses a plaintiff's action, other than for one of the rule's three exceptions, and if the plaintiff does not procure leave of court to refile the complaint or if a statute does not guarantee that opportunity." *Richter*, 2016 IL 119518, ¶ 24. In other words, a dismissal order under Rule 273 results in a final adjudication on the merits when the order specifies it is "with prejudice" or the trial court denies leave to amend the complaint. *Id*. ¶ 25.

¶ 23        Thulis and Webb contend the dismissal was voluntary, negating Rule 273's suitability. Instead, they rely on a recent Supreme Court decision, *United States ex rel. Polansky v.*

*Executive Health Resources, Inc.*, 599 U.S. 419 (2023), to argue applying Illinois' voluntary dismissal rules in section 2-1009 of the Code (735 ILCS 5/2-1009 (West 2022)). In *Polansky*, the Supreme Court considered what standard affects a motion to dismiss under the False Claims Act. The Court held that the standard described in Rule 41 of the Federal Rules of Civil Procedure (Fed. R. Civ. P. 41) governs voluntary dismissal. *Polansky*, 599 U.S. at 435. In so holding, the Court wrote:

> "nothing in the FCA suggests that Congress meant to except *qui tam* actions from the usual voluntary dismissal rule. To the contrary, the FCA's many cross-references to the Rules suggest that their application is the norm. *** As a practical matter, the Federal Rules apply in FCA litigation in courts across the country every day. There is no reason to make an exception for the one about voluntary dismissals." *Polansky*, 599 U.S. at 436.

¶ 24      We agree with Thulis and Webb that Rule 273 does not fit the State's voluntary dismissal of the relator's *qui tam* case. But we need not decide whether section 2-1009 does. Where a general and a specific provision relate to the same subject, the specific provision controls and should be followed. *Kloeppel v. Champaign County Board*, 2022 IL 127997, ¶ 22 (citing *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384-85 (1992). A specific provision in section 4(c)(2)(A) of the False Claims Act allows the State to "dismiss the action notwithstanding the objections of the person initiating the action if the person has been notified by the State of the filing of the motion and the court has provided the person with an opportunity for a hearing on the motion." 740 ILCS 175/4(c)(2)(A) (West 2022); *State ex rel Fox v. Thornley*, 2023 IL App (4th) 220622, ¶58 ("Illinois courts have never applied the standards of section 2-1009 to motions to dismiss by the State in *qui tam* suits").

¶ 25    *Thornley* relies on our supreme court's decision in *Scachitti v. UBS Financial Services*, 215 Ill. 2d 484 (2005). There, the Court explained that section 4(c)(2)(A) of the Act gives the State "complete control" over a *qui tam* action, noting that "the Attorney General has authority to dismiss or settle the action at any time, despite the objections of the *qui tam* plaintiff." *Scachitti* at 512-13. Thus, because the State had "complete control" of the *qui tam* case and voluntarily dismissed it over the relators' objection, the dismissal constitutes neither a final judgment on the merits nor does it preclude the relator's filing their own complaint.

¶ 26    The City cites *United States ex rel. CIMZNHCA, LLC v. UCB, Inc.*, 970 F.3d 835 (7th Cir. 2020), as "more on point" than *Polansky* or *Thornley* because the court observed that a *qui tam* action may be dismissed *without* prejudice as to the government but *with* prejudice as to the relator. *Id* at 843, 850, 854. Nothing in *State ex rel. Thulis v. City of Chicago*, 2021 IL App (1st) 191675-U suggests dismissal was with prejudice to the relators. Furthermore, *CIMZNHCA* did not involve section 4(c)(2)(A) of the Illinois False Claims Act or section 2-1009 of the Illinois Code of Civil Procedure, rendering the statement inconsequential.

¶ 27                            Identity of Parties

¶ 28    Thulis and Webb assert the real party in interest in the *qui tam* case, and this case is not the same. In the *qui tam* case, the State was the real party in interest. In this class action, the State is absent. Thulis and Webb, as relators, filed the *qui tam* case to seek relief for the State—that the City comply with RUUPA by turning the uncashed checks over to the State. Here, Thulis and Webb brought a class action against the City on their own behalf and for a potential class of similar payees.

¶ 29    The City contends our supreme court's decision in *Scachitti* supports finding an identity of parties. In *Scachitti*, the court acknowledged that in a *qui tam* case there is "no cognizable

injury in fact suffered by the relator." But, relying on the United States Supreme Court's decision in *Vermont Agency*, 529 U.S. 765, the court held that a relator has standing as a partial assignee of the State's claim. *Scachitti*, 215 Ill. 2d at 508. In *Vermont Agency*, the Supreme Court held "the doctrine that the assignee of a claim has standing to assert the injury in fact suffered by the assignor" as an adequate basis for *qui tam* relator standing because "[t]he FCA can reasonably be regarded as effecting a partial assignment of the Government's damages claim." *Vermont Agency*, 529 U.S. at 773. So, the relator's complaint alleging an injury in fact to the United States sufficed to confer standing on the relator. *Id.* at 774.

¶ 30   Adopting the reasoning in *Vermont Agency*, the Court held that a *qui tam* claim is a partial assignment of the State's claim under the *qui tam* provisions, permitting a private person to " 'bring a civil action for a violation of [the Act] for the person and for the State.' (Emphasis added.) 740 ILCS 175/4(b)(1) (West 2002)." *Scachitti*, 215 Ill. 2d at 508. "In other words, the interest of a *qui tam* plaintiff in a claim under the Act is justified as a partial assignment of the State's right to bring suit." *Id.*

¶ 31   That Thulis and Webb, as relators, had standing to bring a *qui tam* case is without dispute. But they had no personal stake in the damages sought—all of which, by definition, were suffered by the State. *Burlington Coat Factory Warehouse Corp.*, 369 Ill. App. 3d a 513 (2006). Although *qui tam* actions allow individuals to initiate enforcement against wrongdoers who cause injury to the public, the *qui tam* suit "is on behalf of and in the name of the Government. The suit alleges injury to the Government alone." *Polansky*, 599 U.S. at 437. See *Vermont Agency of National Resources,* 529 U.S. at 773 (noting, relator's interest is unrelated to actual injury and likening it to someone placing wager on outcome). Thus, because the parties in the two cases differ, the identity of parties' requirement has not been satisfied.

¶ 32            *Res Judicata* is Unrealizable

¶ 33      *Res judicata* demands that all three requirements be met. *Hudson*, 228 Ill. 2d at 467. As noted, the parties to the two cases are not the same, which, along with the absence of a final judgment on the merits, excludes *res judicata* as a ground for dismissing the complaint. *Goodman*, 408 Ill. App. 3d at 300 (claim not barred by *res judicata* where one of the requirements is not satisfied). So, we need not consider the third element, identity of causes of action.

¶ 34            Other Grounds for Dismissal

¶ 35      The trial court did not consider dismissal on the other grounds the City raised: whether Thulis and Webb (i) have an implied right of action under RUUPA, (ii) stated a claim under the Interest Act and the Consumer Fraud Act, and (iii) can seek common law relief for unjust enrichment, conversion, and mandamus. We remand for the trial court to address the merits of these arguments.

¶ 36      Reversed and remanded with directions.